**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**HOLADAY CIRCUITS, INC., a Minnesota Corporation,**

Plaintiff,

v.

**GROUP TECHNOLOGIES CORP., a Florida Corporation,**

Defendant.

Civil No. 00-2038 (PAM/JGL)

**ORDER**

APPEARANCES

Mark S. Brown, Esq., on behalf of Plaintiff.

Thomas H. Boyd, Esq., on behalf of Defendant.

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of District Court on September 14, 2000, on Plaintiff's Motion to Stay Arbitration Proceedings (Doc. No. 2). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1

## I. INTRODUCTION

This litigation arises out of a contractual relationship between the parties. Plaintiff submitted price quotations, and Defendant began placing purchase orders with Plaintiff for circuit card assemblies in 1989. From 1989 to 1998, Defendant purchased approximately

FILED SEP 1 5 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD ________
DEPUTY CLERK ________

40,000 circuit card assemblies from Plaintiff. The purchase orders used and transmitted by Defendant to Plaintiff stated that the purchase order was subject to the "General Terms and Conditions" set forth on the reverse side of the purchase order, which included terms regarding arbitration and dispute resolution. Paragraph 22 of the General Terms and Conditions provides:

> APPLICABLE LAW, DISPUTE RESOLUTION AND VENUE. The validity, construction and performance of this order shall be governed by the laws of the State of Florida. Any controversy or claim arising out of or related to this order, or breach thereof, shall be resolved by arbitration in accordance with the rules of the American Arbitration Association and the venue for such arbitration shall be Tampa, Hillsborough County, Florida. Judgment upon the award rendered by the arbitrator(s) shall be entered by a court, either state or federal, of appropriate jurisdiction in Tampa, Hillsborough County, Florida.

Paragraph 24 of the General Terms and Conditions provides:

> DISPUTES. Any dispute arising under this order which is not disposed of by agreement of the parties shall be decided by a court of competent jurisdiction. Pending settlement or final decision of any such dispute, Seller shall proceed diligently with the performance of this order in accordance with Buyer's direction.

Plaintiff shipped the circuit card assemblies to Defendant along with packing slips and sales invoices, all printed on a universal form with the following language:

> Since we have no control over the conditions under which our products are designed, transported, stored, handled, used or combined

> with other products, all sales are made on the condition that we will not be held responsible for results obtained by buyer in using the products covered by this document. Date of acceptance on our products occurs at the point buyer's incoming inspection is complete [sic] no later than 30 days after receipt. Any returns to us of our products must be made within 30 days from the date of receipt.

Sometime during the middle of 1998, Defendant began to detect high rates of delamination of the circuit card assemblies it had purchased from Plaintiff. On October 22, 1998, Plaintiff issued a recall notice for circuit card assemblies that it had sold to Defendant. The next day, Defendant issued a formal supplier corrective action request to Plaintiff concerning the delamination problem. Defendant was not satisfied with Plaintiff's response to the problem and notified Plaintiff that it was revoking its acceptance of the circuit card assemblies. Defendant then served and filed its Demand for Arbitration of its claims against Plaintiff with the American Arbitration Association ("AAA").

In the present motion, Plaintiff moves this Court for an Order staying the arbitration proceedings, which are scheduled to take place on September 22, 2000 in Tampa, Florida. For the reasons discussed below, Plaintiff's motion is denied.

## II. DISCUSSION

Plaintiff asserts that the contract that serves as the subject of this dispute was formed through an exchange of forms between the parties. Plaintiff contends that its written price quotation to Defendant constituted a valid offer under the Uniform Commercial Code ("UCC"), and that Defendant's subsequent purchase order was an acceptance of Plaintiff's offer. Defendant, however, contends that price quotations are not offers to contract, and that Defendant's purchase order was the offer and Plaintiff's performance constituted acceptance.

In deciding this matter, "the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of the agreement." Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 694-95 (8th Cir. 1994) (citing Daisy Mfg. Co. v. NCR Corp., 29 F.3d 389, 392 (8th Cir. 1994). If the Court determines that the dispute falls within the scope of a valid arbitration agreement, the court must compel arbitration. See 9 U.S.C. §§ 3 and 4. Furthermore, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Mem'l Hosp. V. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

Under Minnesota law, a "written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the

parties is valid, enforceable, and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." Minn. Stat. § 572.08. Therefore, the Court must first determine whether the parties have agreed to arbitrate a given dispute. See Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). The Court must apply contract principles to evaluate agreements to arbitrate. See Lucas v. American Family Mut. Ins. Co., 403 N.W.2d 646, 648 (Minn. 1987). Section 2-207 of the UCC, adopted in Minnesota as Minn. Stat. § 336.2-207, allows merchants to contract for the sale of goods without having to negotiate and draft formal contracts. Section 2-207 provides in relevant part:

> Additional Terms in Acceptance or Confirmation (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms. (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

Minn. Stat. § 336.2-207. In order for this Section to apply, conflicting forms must be at issue.

Under Minnesota law, a sale of goods where a manifestation by a party is "clear, definite and explicit, and leaves nothing open for negotiation, it constitutes an offer . . . ." Litton Microwave Cooking Prods. v. Leviton Mfg. Co., Inc., 15 F.3d 790, 794 (8th Cir. 1994) (quoting Short v. Sun Newspapers, Inc., 300 N.W.2d 781, 786 (Minn. 1980) (quotations omitted)). Under this rule, price quotations are generally not offers to form a contract. See Litton, 15 F.3d at 794 (citing W.H. Barber Co., Inc. v. McNamara-Vivant Contracting Co., Inc., 293 N.W.2d 351, 355 (Minn. 1979)). In W.H. Barber, the defendants claimed that the price quotation letter in that matter constituted an offer to enter into a contract. The Minnesota Supreme Court held that the price quotation letters simply invited the plaintiffs to make offers and could not be used as a basis to prove a term in an underlying contract. See W.H. Barber Co., Inc., 293 N.W.2d at 355.

Nevertheless, Plaintiff argues that its price quotation letter constitutes an offer to enter into a contract. Specifically, Plaintiff argues that this case is similar to White Consol. Indus., Inc. v. McGill Mfg. Co., Inc., 165 F.3d 1185 (8th Cir. 1999), in which the Eighth Circuit found that the defendant's price quotation letters constituted an offer. In White, the defendant sent samples and a price quotation setting forth the conditions of sale on its reverse side. See id. at 1187. Furthermore, the price quotation also indicated that defendant offered to sell the products at the quoted price, and made the offer for immediate acceptance. See

id. That is not the case here. Plaintiff's price quotation letters contained no language as to the conditions of sale, nor did they indicate they were offers made for immediate acceptance. The Court, therefore, declines to equate White to this case.

The Eighth Circuit has stated that "[t]he mere description of merchandise, coupled with the purchase terms, is not, in itself, sufficient to constitute a legally valid offer." Day v. Amax, Inc., 701 F.2d 1258, 1263 (8th Cir. 1983). Furthermore, without a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it," there can be no contract. Id. Although Plaintiff's price quotation letters were clear, definite, and explicit, the Court does not agree that the letters left "nothing open for negotiation." See Litton, 15 F.3d at 794. The parties were free to negotiate terms and conditions of sale, such as timing, delivery, and quantities. Plaintiff's price quotation letters merely described the merchandise along with purchase terms. As such, they are not "sufficient to constitute a legally valid offer." Day v. Amax, Inc., 701 F.2d at 1263. Thus, the Court finds that Plaintiff's price quotation letters were not offers to enter into a contract.

Defendant's purchase order is, however, an offer to enter into a contract. The purchase order at issue contains terms that are clear, definite, explicit, and leave nothing open for negotiation. See Litton, 15 F.3d at 794. In fact, in its General Terms and Conditions, the

purchase order states that "acceptance of the purchase order is limited to the express terms and conditions contained herein." (Brown Aff. Ex. B.) Paragraph one of the purchase order's General Terms and Conditions further states that "any additional or different terms or condition on seller's acknowledgement form or otherwise communicated by seller in accepting this order is hereby objected and rejected, but such proposal shall not operate as a rejection of this order . . . ." (Id.)[1]

Furthermore, Plaintiff's actions in filling the orders clearly constituted its acceptance of the offer contained in the purchase order, and thereby the parties formed a valid, enforceable contract. As such, the terms set forth in the purchase order's General Terms and Conditions are the terms of the contract between the parties, including the agreement to arbitrate any disputes arising out of the purchase order. Thus, the Court finds that the parties made an agreement to arbitrate.

Plaintiff argues that paragraphs twenty-two and twenty-four of the purchase agreement are in conflict with each other, and therefore ambiguous and unclear. It asserts that the ambiguity of the two paragraphs nullifies the purchase order as an offer to contract because the terms are not clear, definite, and explicit. Defendant argues that the paragraphs are clear and contain no ambiguity or conflict. The Court

[1] The Court notes that under Minn. Stat. § 336.2-207, both of these terms of the purchase order act to nullify any additional terms that Plaintiff proposed on its invoices and packing slips.

agrees. Paragraph twenty-two sets forth that any "controversy or claim" that arises out of or is related to the purchase order shall be submitted to arbitration. Paragraph twenty-four provides that "any dispute arising under this order which is not disposed of by agreement of the parties shall be decided by a court of competent jurisdiction." By accepting the terms of the purchase agreement, the parties entered into a binding contract containing an agreement to submit any claims arising out of the purchase order to arbitration. Paragraph twenty-four simply provides a right for the parties to pursue appropriate relief in court should a dispute not be disposed of by arbitration or other agreement between the parties. Therefore, the Court finds that the language of the General Terms and Conditions in the purchase order is clear, definite, and explicit, leaving nothing open for negotiation. See Litton, 15 F.3d at 794. Thus, the agreement to arbitrate is valid.

Once the Court determines that a valid agreement exists between the parties, the Court must then address whether the specific dispute falls within the scope of the agreement. See Houlihan, 31 F.3d at 694-95. There is no question here. The dispute between the parties arises directly out of the purchase order. Therefore, the Court finds that

this dispute falls within the scope of the arbitration agreement as set forth in the Defendant's purchase order.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Stay Arbitration Proceedings (Doc. No. 2) is **DENIED.**

Dated: September 15, 2000

JONATHAN LEBEDOFF
United States Magistrate Judge